⸴ FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

97 JAN 28 PM 12: 33

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JAN 2 8 1997

| | |
|---|---|
| GARY G. COOPER, et al., )<br>)<br>  Plaintiff, )<br>)<br>vs. )<br>)<br>PICKENS COUNTY, ALABAMA, )<br>et al., )<br>)<br>  Defendants. ) | CIVIL ACTION NUMBER<br><br>95-C-2947-W |

## MEMORANDUM OF OPINION

After a January 8, 1997, unannounced inspection of the Pickens County Jail, Pickens County District Judge Woodard wrote:

> Conditions in the jail defy word description. Only a personal inspection can reveal the severity of the conditions therein. This jail is inhumane, and not fit for human habitation. It is not fit for livestock. No man who valued his horse or dog would keep it confined within these walls. The conditions are a disgrace to a Christian people in a democratic society.

Plaintiff Exhibit ("PX")1, p.3.

The question raised by plaintiffs' Motion For Emergency Relief is whether the conditions of the Pickens County Jail offend the Eighth Amendment's ban against cruel and unusual punishment. The simple answer is a resounding "yes."

24

Based on the largely undisputed facts which follow, the Court will grant immediate relief.


I

The Pickens County Jail ("PCJ"), in Carrolton, Alabama, has had serious shortcomings for much of the last fifteen years.

In August 1993, Sheriff David Abston wrote to the county commissioners and informed them that he needed four additional persons to act as jailers.  At that time the Sheriff had a single employee who doubled as the dispatcher and the jailer.   This employee was caught between the proverbial rock and a hard place:

> "As a jailer, he is expected to go in the cell
> block to check on the safety and security of
> inmates.  As a dispatcher, he is expected to
> stand by the radio and telephone to monitor
> emergency calls at all times.  If an employee
> does one of these jobs right, he is in
> violation of departmental policy because he
> has neglected the other job.

Defendant Exhibit ("DX") 4.  As of the writing of this Memorandum of Opinion, the Pickens County dispatcher is the sole jailer.

Because the jailer/dispatcher spends most of his/her time on dispatcher duties, the needs of the inmates go largely unattended.  If a fight breaks out in the cells on the second floor (where most of the inmates are housed), or if an inmate gets sick, there is no effective video or audio system links that links the

2

dispatch area to the inmate living area. While the jailer/dispatcher may hear and respond to the beating on the cell walls by the handful of inmates on the first floor, she cannot hear the second-floor inmates as they beat on the walls in an effort to get their attention. Inmates frequently telephone their friends or relatives outside the prison so that one of them can come to the jail and alert the dispatcher to a problem in the cells.

The lack of attention to, and supervision of the inmates is exacerbated by the fact that the jail is overcrowded. As of January 20, 1997, there were 71 inmates who were incarcerated in the PCJ; it has a design capacity of 54.

The cells vary from 15 square feet per inmate to 25 square feet per inmate. These gross measurements include bed and shower space.

Inmates sleep on the floors between the bunks and in hallways on a regular basis. Some inmates sleep on the dilapidated mattresses; others sleep on the bare concrete floors. Some of these floors are wet with water from the leaking and flooded toilets, water pipes, showers, broken windows, and the leaky toilets. Other sleeping areas include hallways adjacent to broken windows boarded up by the inmates with cardboard and plastic bags.

The mattresses have long since given up their useful lives. Some of the "mattresses" are simply a strip of old foam.

Again, Judge Woodard's findings are graphic:

> The narrow halls connecting the cell blocks
> are lined down one side with men sleeping on
> the cold (and often damp or wet) floors, with
> no mattress or bed. ....Sewage is running down
> the wall adjoining the staircase to the second
> floor, and ...[w]ater was running down the
> inside of the rear outside wall of the jail,
> adjoining the rear cell block.  The adjacent
> hall floor was under water....

PX 1, p. 3.

In the cells without working toilets and sinks, inmates sometimes urinate in the same showers from which they obtain their drinking water.

The plumbing in the cell blocks, or lack of it, is remarkable.  There are water leaks in every cell.  Many of the commodes are inoperable; and those that are operable leak at the seals and require a pail of water for every flushing.  The floors of various cells are flooded constantly.

The December 30, 1996, inspection by the Pickens County Health Department revealed, among other things, the following:

> Sinks, toilets and showers in the cells all
> need work.   Water lines are leaking in the
> walls.
> . . . .
> There is [sic] not enough working toilets,
> handwash sinks, and showers.
> . . . .
> Toilets, showers, and handwash sinks need
> repairing and cleaning
> . . . .
> There are no hand towels in the cells.

4

> . . . .
> There were indications of roaches and mice.
> . . . .
> Several windows are out.
> . . . .
> The walls and ceilings in the jail all need
> repair work and cleaning.
> . . . .
> Many lights do not work.
> . . . .
> The heat was not working.
> . . . .
> There was no ventilation in the facility.
> . . . .
> Sheets are needed for the bunks.
> . . . .
> The mattresses are in bad shape, and should be
> replaced.

PX 7, pp. 4-6.

Following the December inspection, the Public Health Environmentalist warned the defendant commissioners: "The present conditions of the facility are highly suspect as being suitable for human habitation." PX 2, Ambrose Letter to County Commission, p.3.

As this judge observed on his January 21, 1997, nighttime visit to PCJ, exposed electrical wires abound in the cells.

As noted earlier, the heating system in PCJ is almost non-existent.  This judge witnessed the cool air being blown out of the unit.  Many of the vents have been displaced.  Based on the evidence, the defendants have no plans to repair or replace the unit, despite projected freezing temperatures within the next few days.

It has been a long time since PCJ was painted; and the ancient paint is peeling from the ceilings and walls.

Inmates live in the clothes in which they were brought to the jail.  No other clothing or linen or towels are provided.


II

Defendant Sheriff Abston has brought these intolerable conditions to the defendant county commissioners.  He has consistently and futilely requested that the commissioners either build a new jail, or renovate the present one.  Last year, for example, he requested that the plumbing be replaced based on a $55,429 bid from the State Department of Corrections' Industries Division.  See DX 1.  The commissioners have basically ignored his request.  While PCJ's population has increased dramatically, the commissioners have not increased its $5,000 annual allotment for jail maintenance since 1987.[1]

There is no reason to believe that without federal judicial intervention, the commissioners will allocate the funds to either build a new jail or completely renovate the present one.  By their actions, the commissioners have shown that they are impervious to the right of PCJ inmates to be free from cruel and unusual punishment.

This Court is not similarly impervious.  By appropriate order, a preliminary injunction will issue.

---

[1]  The Sheriff testified credibly that he must "beg" private citizens for food for the inmates, since the State of Alabama provides only $1.75 per day for each inmate.

DONE this _____*28th*_____ day of January, 1997.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON